JOHN MILLER ET AL. *v.* ROSE M. BOURGOIN ET AL.
(10005)

O'CONNELL, LANDAU and FREEDMAN, JS.

Argued January 22—decision released August 4, 1992

*Alexander Scheirer,* for the appellants (defendants).

*Annemarie E. Bushka,* with whom, on the brief, was *Charles F. Brower,* for the appellees (plaintiffs).

O'CONNELL, J. The defendants appeal from the trial court's decision rendering summary judgment in the

plaintiffs' favor on both the complaint and the defendants' counterclaim. The appeal arises from an alleged breach of a written contract for the construction and sale of a house.

The defendants' first four claims are subsumed under the claim that the trial court improperly granted the plaintiffs' motion for summary judgment on the complaint because there were material factual issues to be determined.[1] The defendants' fifth claim is that the trial court improperly granted summary judgment on the counterclaim because it was not before the court and because there were material factual issues to be determined. We reverse the judgment on the complaint and the counterclaim.

The following facts are relevant to the appeal. The plaintiffs were prospective buyers of a building lot and house to be constructed by the defendants. The parties' original written contract specified a closing date of September 12, 1989. The plaintiffs paid a $16,000 deposit toward the purchase price of $190,000 with the balance to be paid at the closing.

In July, 1989, in connection with the installation of the septic leaching fields, the defendants had the property resurveyed and discovered that the foundation extended several feet over the approved building line.

---

[1] The defendants stated the issues as follows:

"1. Did the Court err in finding as a matter of law that the defendants-appellants had 'failed to state facts sufficient to support a finding that a genuine issue of material fact exists and that the plaintiffs are not entitled to summary judgment as a matter of law'?

"2. Did the Court err in finding that the defendants' submission of documents failed to establish the existence of a genuine issue of material fact?

"3. Did the Court err as a matter of law in concluding that no genuine issue of fact existed?

"4. Did the Court err as a matter of law in entering summary judgment [on] the plaintiffs' Motion for Summary Judgment?

"5. Did the Court err as a matter of law in entering summary judgment for plaintiffs on the Counterclaim of defendants-appellees?"

The defendants attempted to remedy the problem by applying for a zoning variance. The application was denied in early September and the defendants were forced to reposition the foundation, thereby incurring a delay.

Recognizing that the house would not be completed by September 12, the parties agreed to postpone the closing date to October 31, 1989. Thereafter, the defendants requested, and the plaintiffs granted, five further extensions of time for the defendants to perform the contract. Three of those extensions were granted after the plaintiffs had unilaterally notified the defendants that time was of the essence.

The final agreed upon closing date was January 2, 1990, subject to the issuance of a certificate of occupancy and a final inspection by the plaintiffs' mortgage lender, which was to take place on December 29, 1989. On the morning of December 29, the mortgage lender inspected the premises and notified the plaintiffs that the house was not sufficiently complete to allow a January 2, 1990 closing. Later that day, the plaintiffs communicated to the defendants, both orally and in writing, that they were terminating the contract on the ground that the defendants had breached the contract by failing to complete the house in a timely manner. The plaintiffs further demanded the return of their $16,000 deposit. On January 4, 1990, five days after the notification of termination and two days following the scheduled closing date, the town building inspector issued a certificate of occupancy for the house. The defendants ultimately sold the house to a third party in June of 1990 for a figure substantially less than the contract price.

The plaintiffs brought this action, in two counts, to recover their deposit. The first count alleged that the defendants breached the contract by failing to have the

premises completed by December 29, 1989. The second count alleged that the actions of the defendants "constituted unfair, immoral, unethical, oppressive and unscrupulous business practices" in violation of General Statutes § 42-110b of the Connecticut Unfair Trade Practices Act (CUTPA).

The defendants' answer raised special defenses concerning waiver and estoppel, substantial performance, fraudulent representation, setoff, and the nonapplicability of CUTPA. The defendants additionally filed a counterclaim in two counts to recover the difference between the contract price and the actual selling price. The plaintiffs' answer to the counterclaim raised seven special defenses to each count.

After the pleadings were closed, the plaintiffs filed a motion for summary judgment on the complaint, supported by four affidavits, a deposition and answers to interrogatories. In opposition, the defendants offered three counter affidavits and two depositions.

The trial court granted the plaintiffs' motion for summary judgment and, in response to the defendants' motion for articulation, clarified that it had also granted summary judgment for the plaintiffs on the counterclaim. This appeal followed.

I

The defendants' first four claims, taken together, contend that the trial court improperly granted the plaintiffs' motion for summary judgment on the complaint because there were material factual issues to be determined.

Practice Book § 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Further, "[t]he party seeking summary judgment bears the burden of showing the nonexistence of any material fact, which is any fact that will make a difference in the result of a case." *Bassin* v. *Stamford*, 26 Conn. App. 534, 537, 602 A.2d 1044 (1992).

"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted; internal quotation marks omitted.) *Connell* v. *Colwell*, 214 Conn. 242, 246, 571 A.2d 116 (1990). It is axiomatic that "[i]n order to oppose successfully a motion for summary judgment, the opposing party must recite facts . . . which contradict those offered by the moving party." (Internal quotation marks omitted.) *Citizens National Bank* v. *Hubney*, 182 Conn. 310, 312, 438 A.2d 430 (1980). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." *Connell* v. *Colwell*, supra, 246–47. Moreover, "[i]n ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." *Lomangino* v. *LaChance Farms, Inc.*, 17 Conn. App. 436, 438, 553 A.2d 197 (1989).

Among the issues claimed to require a factual determination is the question of whether the contract had been substantially performed on December 29, 1989, the date on which the plaintiffs terminated the contract.

The parties generally agree on the status of the house on the morning of December 29, 1989. When the mortgage lender's inspector arrived that morning, there were no contractors on the site. The house still lacked several items including a sewage-waste permit, a rail-

ing on the front porch, a completed garage floor, floor coverings, and bathroom fixtures. The defendants claim, however, that the inspection was conducted before the agreed upon time. Had the inspection taken place at the proper time, they argue, the inspector would have seen that the required work was being done. The defendants also submitted an affidavit and deposition as evidence that much of the work was completed by the end of the day. In contrast, the plaintiffs contend that the house could not have been substantially complete either on December 29, 1989, or on the closing date of January 2, 1990, because the town building inspector declined to issue a certificate of occupancy until January 4, 1990.

The determination of "[w]hether a building contract has been substantially performed is ordinarily a question of fact for the trier to determine." *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 472, 542 A.2d 692 (1988); *Argentinis* v. *Gould,* 23 Conn. App. 9, 14, 579 A.2d 1078 (1990), rev'd in part, 219 Conn. 151, 592 A.2d 378 (1991). The analysis necessarily involves an inquiry into the totality of facts and circumstances surrounding the performance of the contract. See 2 E. Farnsworth, Contracts § 8.12.

Although the issuance of a certificate of occupancy may be evidence of substantial performance, it is not dispositive of the question. See, e.g., *Argentinis* v. *Gould,* supra. Other factors to be considered include the extent to which the injured party will be deprived of the benefit reasonably expected, the extent to which that party can be adequately compensated for the deficiency of performance, the extent to which the performing party will suffer forfeiture, the likelihood that the performing party will cure his failure in light of the circumstances and his reasonable assurances, and the extent of good faith and fair dealing on the part of the performing party. See 2 Restatement (Second), Con-

tracts § 237 comment d, and § 241; see also *Vincenzi v. Cerro,* 186 Conn. 612, 616, 442 A.2d 1352 (1982).

In light of these factual considerations, our review of the record satisfies us that the plaintiffs had not met their burden of showing the absence of any genuine issues of material fact regarding substantial performance. Genuine issues remained, for example, concerning the extent to which the status of the house conformed to the contract and the reasonable expectations of the plaintiffs on December 29, 1989, and January 2, 1990.

Genuine issues also remained regarding the good faith and fair dealing of the defendants. This element of the substantial performance inquiry was placed in issue by the plaintiffs' allegations of misrepresentation on the part of the defendants. The defendants claimed, however, to have applied their best efforts, both to keep the plaintiffs informed of the progress of the house and to complete the house within the allotted time. In support of those claims, the defendants submitted affidavits that detailed the history of the construction of the house and the relationship of the parties. Additionally, the defendants alleged, by special defense, that the plaintiffs had fraudulently misrepresented their intention to purchase the house.

Allegations such as misrepresentation and fraud present issues of fact. *Maturo* v. *Gerard,* 196 Conn. 584, 587, 494 A.2d 1199 (1985). Moreover, "[w]hether evidence supports a claim of fraudulent or negligent misrepresentation is a question of fact." *McClintock* v. *Rivard,* 219 Conn. 417, 427, 593 A.2d 1375 (1991). "It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions . . . . It is only when the witnesses are

present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised." (Citations omitted; internal quotation marks omitted.) *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 376, 260 A.2d 596 (1969). Nevertheless, it remains "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined as a matter of law, that a genuine issue of material fact exists." *Connell* v. *Colwell,* supra, 251. In the present case, the record reveals that the defendants had established an adequate factual predicate to demonstrate the existence of a genuine issue of material fact concerning their good faith and fair dealing.

Another issue was the question of whether time was of the essence. Generally, "[w]here a time for performance is stated in an agreement, a party's tender of performance within a reasonable time thereafter will be considered substantial performance unless the parties intend that time for performance be of the essence." *Mihalyak* v. *Mihalyak,* 11 Conn. App. 610, 616, 529 A.2d 213 (1987). Because delays are typical in transactions involving real property or building contracts, time is ordinarily not of the essence in these contracts. 6 S. Williston, Contracts (3d Ed.) §§ 849, 852; 3A A. Corbin, Contracts § 720. The resolution of whether it is part of the contract involves a "question of the intent of the parties, to be determined, as a matter of fact, from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto." *Kakalik* v. *Bernardo,* 184 Conn. 386, 393, 439 A.2d 1016 (1981).

Where "a definite date for performance is specified in the agreement, but performance on time is not of the essence, either party has power to make on that date or on some subsequent date performance essential and a condition of his own duty by giving notice

to that effect, provided that the notice leaves a reasonable time for rendering the performance." 3A A. Corbin, Contracts § 723, p. 383; see also *Fullerton* v. *McGowan*, 6 Conn. App. 624, 629, 507 A.2d 473 (1986). The reasonableness of the time demanded "depends upon the character of the performance promised and upon all of the surrounding circumstances that the parties know or have reason to know." 3A A. Corbin, Contracts § 723, p. 384.

In the present case, the plaintiffs notified the defendants by letter dated November 27, 1989, that time was of the essence and that the closing must take place on December 12, 1989. Thereafter, the plaintiffs agreed to postpone the closing date three more times and, according to the defendants, made no further mention that time was of the essence. Consequently, the record demonstrates that there were unresolved genuine issues of material fact regarding the validity and effect of the plaintiffs' notification as well as the reasonableness of the various times set for performance.

Accordingly, in view of the genuine issues of material fact yet to be determined, we hold that the trial court improperly granted the plaintiffs' motion for summary judgment on the complaint.

II

The defendants next assert that the trial court improperly granted summary judgment on the defendants' counterclaim on the basis that no motion seeking summary judgment on the counterclaim was before the court. *Cummings & Lockwood* v. *Gray*, 26 Conn. App. 293, 299, 600 A.2d 1040 (1991), which was decided after the briefs had been filed in this appeal, is dispositive of the issue.

The plaintiffs' motion for summary judgment was directed solely to the complaint. Neither party had filed

a motion for summary judgment on the counterclaim, and neither party had notice that the counterclaim was at issue. In that situation, "[a] court may not grant summary judgment sua sponte. . . . The issue first must be raised by the motion of a party and supported by affidavits, documents or other forms of proof. *Booth* v. *Flanagan,* [19 Conn. App. 413, 415, 562 A.2d 592 (1989)]. Further, 'any party may move for summary judgment upon any counterclaim . . . as if it were an independent action.' Practice Book § 379. Because a counterclaim is a separate and distinct action; Practice Book § 379; *Home Oil Co.* v. *Todd,* 195 Conn. 333, 341, 487 A.2d 1095 (1985); a party seeking summary judgment on both a complaint and a counterclaim must file an appropriate motion addressed to each. See Practice Book § 379." (Citations omitted.) *Cummings & Lockwood* v. *Gray,* supra.

Accordingly, the trial court was without authority to grant summary judgment on the counterclaim. Id., 299–300.

The judgment on the complaint and on the counterclaim is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.

