[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR PREJUDGMENT REMEDY
The plaintiff, through this application seeks a prejudgment remedy in the amount of $600,000. The plaintiff is a limited liability company formed to construct and operate a self storage facility in Derby, Connecticut. The defendant, a corporation, signed an agreement with the plaintiff to furnish and install pre-engineered buildings for this facility. This application and the action to be commenced arose after the plaintiff terminated the agreement. The application and accompanying documents were served on the defendant on May 7, 2001. Both parties filed offers of proof. A hearing began on July 12, 2001, and continued over three more days, concluding the 30th of August, 2001. The plaintiff filed a summary of claims on August 30th, and the defendant filed a reply on September 6, 2001. CT Page 13468-cs
Under General Statutes § 52-278d, at the hearing, the court is to determine whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than that sought, taking into account any defenses, counterclaims or set offs, will be rendered in favor of the plaintiff. Our Supreme Court instructs that "a court is required to consider not only the validity of the plaintiff's claim but also the amount that is being sought." UnionTrust Co. v. Heggelund, 219 Conn. 620, 625 (1991); see also Giordano v.Giordano, 39 Conn. App. 183, 206 (1995). Further,
 The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . . Moreover, this weighing process applies to both legal and factual issues.
(Internal citations omitted; quotation marks omitted.) Bank of BostonConnecticut v. Schlesinger, 220 Conn. 152, 156 (1991).
Applying the standard of probable cause to the evidence presented by the plaintiff, the court determines the following. The parties signed the agreement on July 26, 1999, for $424,986.00. The defendant agreed to use pole barn construction. The building permit issued on April 28, 2000, although the town of Derby would not permit building to begin until June 2000.
The plaintiff was responsible for the site work, and completed the staking for each building in August 2000. The staking was required to be completed before the defendant could begin excavation. The excavation began in August and was completed around the beginning of November. The plaintiff was responsible for paving the floor pads after the excavation; six floor pads were poured by the end of November when they had to suspend pouring cement due to concerns of frost and freezing. In November and December 2000 and January 2001, the plaintiff complained to the defendant's representative that the work was not getting done. In December 2000 and January 2001 the plaintiff learned that the subcontractors hired by the defendant had not been paid by the defendant for work completed. In January 2001, the plaintiff requested that at minimum, four of the buildings be completed. On February 12, 2001, the CT Page 13468-ct plaintiff sent a letter to the defendant terminating the contract. At the time of the plaintiff's letter, the plaintiff had paid the defendant a total of $306,594.35. The plaintiff hired another contractor to complete the project. That contractor testified to a cost of completion of $139,575.00. The subcontractors hired by the defendant have filed mechanics' liens totaling $128,463.51 against the plaintiff. The defendant has filed a mechanic's lien of $214,076.17 against the plaintiff.
The plaintiff argues that the damages arising out of the breach of contract exceed $600,000. It claims as follows:
Cost of completion: $139,575.00
Liens: $128,463.51
Cost of Bonds in lieu of Liens: $7,631.00
Cost of cleanup $5,477.00
Doors $10,065.00
Cost of hiring additional engineers: $2,225.00
Cost of engineers for permit $5,480.00
Liens by Defendant $219,351.17
Attorneys fees $31,000.00
Loss of income $75,413.00
 Interest costs on line of credit through May $42,700.00
 Prejudgment interest $54,846.73 ____________ Total: $722,227.41
The court finds probable cause that a judgment will enter in the plaintiff's favor on a breach of contract claim, specifically as to time of performance. Millerv. Bougoin, 28 Conn. App. 491, 498-99 (1992). While the court finds the plaintiff has met its burden to prove to CT Page 13468-cu a fair and reasonable degree $150,000 in damages, it also finds that the plaintiff has not met its burden to prove to all of its claimed damages. Specifically, because of insufficient evidence tying these damages to the defendant's breach of the contract, the court does not include the doors, the site clean up costs, and the costs associated with obtaining the permit. In addition, the loss of income claimed for the period from October to May 2001 are simply too speculative and attenuated from the breach by the defendant to consider.
As to the mechanic's liens, the law precludes a consideration of the subcontractor's liens as an element of damages for the owner plaintiff. General Statute § 49-33 (f) provides, in pertinent part' that a "subcontractor shall be subrogated to the rights of the person through whom the subcontractor claims. . . ." This limits the fund to which a subcontractor's mechanic's lien may attach "to the unpaid contract debt owed by the owner to the general contractor." Seaman v. ClimateControl Corp., 181 Conn. 592, 602 (1980).
The theory of subrogation protects property owners by limiting the recovery of subcontractors to the unpaid claims of general contractors, thereby preventing owners from making double payments to general contractors and subcontractors. Peltier v. Stevenson Lumber Company, Superior Court, judicial district of Middlesex at Middletown, Docket Nos. 090651 and 090652 (Mar. 23, 2000, Arena, J.) (26 Conn. L. Rptr. 697), citing Seamanv. Climate Control Corp., supra, 181 Conn. 602. "If . . . a general contractor receives progress payments that are not turned over to those who have done the work represented by the progress payments, and ultimately defaults entirely, the owner making such payments and completing such a job is protected as long as the owner acts in good faith and reasonably. . . ." Id., citingRene Dry Wall Co. v. Strawberry Hill Associates,182 Conn. 568, 573 (1980). The court therefore does not consider as additional damages the mechanic's liens of the subcontractor because the plaintiff had paid all but $125,000 of the contract price. CT Page 13468-cv
As to the claim for attorney's fees, the law does not permit the court to allow it under these facts.
 The general rule of law known as the `American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . Connecticut adheres to the American rule.
(Citations omitted; internal quotation marks omitted.) Rizzo Pool Co. v.Del Grosso, 240 Conn. 58, 72-73 (1997).
There is no contractual provision for attorney's fees; the statutory provision cited by the plaintiff is the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Based upon evidence presented at this prejudgment remedy hearing, the court cannot find a likelihood of success on the claim for attorney's fees under CUTPA.
Based on the credible evidence the court finds probable cause to award a prejudgment remedy in the amount of $150,000.
DiPentima, J.